# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GARY D. BARNES, as Trustee in )
Bankruptcy, In re Ruth Anne Alley, )
Case No. 07-42564-7, W.D. Mo., and not )
individually, )
            )
         Plaintiff, )
            )
    vs. )    **Case No. 08-2603-JAR**
            )
CONVERGYS CORP., and ENCORE )
RECEIVABLE MANAGEMENT- )
CONVERGYS CUSTOMER )
MANAGEMENT GROUP, INC., )
            )
         Defendants. )
_____ )

## MEMORANDUM AND ORDER

Plaintiff Gary D. Barnes brings this action as the Trustee of Ruth Anne Alley's

bankruptcy estate. Alley alleges the following claims against her former employers Convergys

Corp. ("Convergys") and Encore Receivable Management-Convergys Customer Management

Group, Inc. ("Encore"): (1) whistleblower retaliation under Kansas law; (2) retaliation under the

Fair Labor Standards Act ("FLSA"); (3) breach of contract under Kansas law; and (4)

promissory estoppel under Kansas law. Defendants further argue in their summary judgment

motion that dismissal is warranted as a discovery sanction based on certain statements Alley

made during her deposition. The Court now considers defendants' Motion for Summary

Judgment (Doc. 46) and plaintiff's Motion for Leave to File Surreply (Doc. 70). The motions

are fully briefed and the Court is prepared to rule. For the reasons explained in detail below, the

Court denies plaintiff's motion for leave to file a surreply and grants in part and denies in part the motion for summary judgment.

I.      **Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4] An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an

---

[1]Fed. R. Civ. P. 56(c)(2).

[2]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

[5]*Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[6]*Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[11] "The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible."[12]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[14] When examining the underlying facts of the

---

[7]*Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671); *see also Kannady v. City of Kiowa,* 590 F.3d 1161, 1169 (10th Cir. 2010).

[8]*Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[9]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

[10]*Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197-98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671); *see Kannady,* 590 F.3d at 1169.

[11]*Adams,* 233 F.3d at 1246.

[12]*Id.*

[13]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[15]

## II.      Statement of Uncontroverted Facts

### A.      *Sham Affidavit Issue and Motion for Leave to File Surreply*

Before determining the uncontroverted facts in this matter, the Court must address Alley's declaration, attached to the Response as Exhibit B.[16]  Defendants argue that certain statements in the declaration should be disregarded because they contradict Alley's earlier deposition testimony.  Plaintiff raised this issue for the first time in the Response, explaining why the attached declaration was permissible and was not a "sham affidavit."  Defendants responded in the Reply, arguing that certain statements in the declaration should be disregarded.  Plaintiff filed a motion for leave to file a surreply, arguing that defendants opposed the declaration for the first time in their Reply, entitling plaintiff to a surreply.

"[I]f the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to those new materials."[17]  Here, the movant did not rely on new materials or new arguments in its Reply.  The Reply responded to a key piece of evidence that plaintiff first disclosed in the Response.  Clearly anticipating defendants' Reply argument, plaintiff actually addressed the issue in the first instance in the Response.[18]  Under these circumstances, the Court finds that a surreply is not warranted.  Defendants did not raise a new

---

[15]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[16](Doc. 65, Ex. B.)

[17]*Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191 (10th Cir. 2006).

[18](Doc. 61 at 53 & nn.20, 21.)

argument in the Reply, and plaintiff adequately stated his position on the issue in the Response. The Court denies plaintiff's motion for leave to file surreply.[19]

Contradictions in a witness's statements do not, alone, preclude the Court from considering such testimony.[20] However, "situations [exist] where a district court may be justified in disregarding certain contradictory testimony . . . when they conclude that it constitutes an attempt to create a *sham fact issue*."[21] In determining whether Alley's declaration seeks to create a sham issue of fact, the Court must consider: (1) whether Alley was cross-examined during her deposition; (2) whether she had access to the pertinent evidence at the time of her deposition or whether the declaration is based on newly discovered evidence; and (3) whether her deposition testimony reflects confusion which the declaration attempts to explain.[22]

The first inconsistency that defendants identify relates to the complaints Alley made to her supervisor, Joe Chadd. Alley testified about her various complaints to Chadd and that she did not make any complaints aside from those discussed during her deposition. She testified in part:

> A.   But there's some complaints or issues we haven't even touched on. I'm getting confused.
>
> Q.   Well, let's go through this. You — I've asked you about what complaints you've made and my question is, have we

---

[19]The Court has reviewed the proposed surreply and notes that it points the Court to the same authority cited to in plaintiff's Response. The arguments asserted in the proposed surreply would not change the Court's decision on whether certain statements in Alley's declaration should be disregarded.

[20]*Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001) (citing *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)); *see also Law Co. v. Mohawk Constr. & Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009).

[21]*Ralston*, 275 F.3d at 973. (quotation omitted).

[22]*Id.*; *Dempsey v. City of Baldwin City, Kan.*, 333 F. Supp. 2d 1055, 1059 (D. Kan. 2004).

<blockquote>
hit them all or are there others, okay?

A.    There's 13 of them.

Q.    When you say there are 13 of them, you're referring to your E-mail?

A.    Uh-huh.

Q.    Okay, we'll go through the E-mail.

A.    And you told me it later.

Q.    And you — I mean, I'm going to go through that E-mail with you as an exhibit, but I'm trying to get — well, other than what's in the E-mail and what you've told me here today, were there any other complaints that you made to management at Convergys?

A.    No.[23]
</blockquote>

In contrast, Alley stated in her declaration:

<blockquote>
As I state in this declaration and have stated all along, there were a number of things I reported when I worked at Encore/Convergys that I believed were improper, unethical, and unlawful. I made these reports throughout my employment, including during August of 2006 up until the time Convergys terminated me or forced me to leave in December of 2006. Many of these reports were made to Joe Chadd. A number of these other reports were to my supervisors who reported to Joe Chadd. I'd also speak to Tom Jordan about these things from time to time.[24]
</blockquote>

The Court agrees with plaintiff that the deposition testimony and the declaration are not necessarily inconsistent on this point. Alley testified that she was confused and that there were complaints and issues that they "haven't even touched on." This is consistent with paragraph 6 of her declaration. It is apparent to the Court that Alley was confused about counsel's questions about the extent of her complaints to Encore and Convergys prior to her termination, which this

---

[23](Doc. 51, Ex. B at 304–05.)

[24](Doc. 65, Ex. B ¶ 6.)

declaration attempts to explain. Additionally, it is undisputed that Alley was not cross-examined. The parties have divergent views about why the remainder of Alley's deposition was cancelled; however, the fact remains that Alley was not cross-examined by her own counsel and provided an opportunity to clarify and explain answers she provided during direct examination; answers that she obviously sought to clarify. For all of these reasons, the Court declines to disregard the statements in Alley's declaration about the frequency and types of complaints she made to Chadd and Jordan.

The second inconsistency that defendants identify concerns Alley's complaints about compensation. Alley testified at her deposition that (1) defendants discovered $480,000 that had not been posted to debtors and that had not been billed to SBC based on her complaints about billing;[25] and (2) that Convergys was not paying Alley enough in bonus because it was not counting all of the money that was actually being collected.

> Q.      And we're going to get into the specifics of what your concerns were, but what I'm trying to get at is your concern about your pay and the pay of others was that Convergys was under counting revenue that it had collected on behalf of SBC, correct?
> A.      True statement.
> Q.      Was that true?
> A.      True for everybody.
> Q.      Was there anyone — anything else with respect to pay?
> A.      No.[26]

In paragraph 15 of her declaration, Alley stated:

---

[25](Doc. 65, Ex. A at 96–97.)

[26]*Id.* at 146–49.

I also believe it is unlawful not to pay employees overtime for hours worked over 40 hours a week. This is something that was ongoing with me and other team leaders. I reported this to and discussed this with Joe Chadd on different occasions, including during the weeks or month just before my leaving in December 2006. Related to that, I also took issue with and told management that time sheets weren't used on a consistent basis and it was not unusual when they were used for them to be knowingly inaccurate. I don't see how a company can accurately and legally keep track of their employees' pay, benefits, and withholding when that's being done.[27]

While the Court agrees that these two statements, taken in isolation, may be inconsistent, the other pertinent factors weigh against disregarding Alley's declaration. Again, Alley was not cross-examined. Alley states in her declaration that she attempted to tell defendants' attorney during the deposition when she wished to expand on a topic of examination and was told that she would be able to clarify with her own attorney at a later time. Also, her testimony reveals that she was confused at times. She did testify at her deposition that she routinely worked more than forty hours per week. Because her counsel never did follow-up with her about this topic and because it is unclear whether Alley fully understood the significance of opposing counsel's questions, the Court declines to disregard the declaration as a "sham affidavit."

B.    *Uncontroverted Facts*

Before reaching the uncontroverted facts, the Court first admonishes plaintiffs' counsel for failing to comply with the local rule for summary judgment responses, which requires:

(1) . . . [A] section that contains a <u>concise</u> statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer <u>with particularity</u> to those portions of the record upon which the

---

[27](Doc. 65, Ex. B ¶ 15.)

> opposing party relies, and, if applicable, shall state the number of
> movant's fact that is disputed.
>
> > (2) if the party opposing summary judgment relies on any
> > facts not contained in the movant's memorandum, that party shall
> > set forth each additional fact in a separately numbered paragraph,
> > supported by references to the record, in the manner required by
> > subsection (a), above.[28]

The response must "fairly meet the substance of the matter asserted."[29]  Plaintiff's responses to defendants' statements of fact are replete with argument and legal conclusions.  The Court largely disregards the arguments set forth in plaintiff's response to defendants' statements of fact, as they are inappropriate.  Often, these arguments do not even address the particular statement of fact that they purport to respond to, requiring the Court to wade through numerous record citations before concluding that the fact is actually not controverted at all.  Legal argument should be relegated to the argument section of the brief, not the statements of fact.[30]

The Court also admonishes plaintiff's attempt to controvert stipulated facts.  These facts have already been stipulated to in the Pretrial Order, an exercise that is intended to provide the Court with facts that all parties agree to.  Plaintiff's attempt to circumvent this process is unavailing.[31]

The following facts are either uncontroverted, stipulated to, or taken in the light most

---

[28]D. Kan. R. 56.1(b) (emphasis added).

[29]R. 56.1(e).

[30]*See* D. Kan. R. 7.6

[31]*See, e.g., Lawyer v. Eck & Eck Mach. Co.*, 197 F. Supp. 2d 1267, 1269 n.1 (D. Kan. 2002).  The Court also encourages plaintiff's counsel to more thoughtfully label exhibits in the future so that they do not correspond to the same labels used by the opposing side.  For example, if the movant labels exhibits numerically, the nonmovant should label exhibits with either a different numerical range or alphabetically.

favorable to plaintiff.  Gary D. Barnes, as Trustee in bankruptcy, *In re Ruth Anne Alley*,

Case No. 07-42564-7, in the Western District of Missouri, and not individually, is the plaintiff in

this matter; Alley is the Debtor.  Encore is based in greater Kansas City and is a collection

company that collects delinquent debts on behalf of various corporate customers.  Convergys

acquired Encore in 2004.  Alley commenced employment with Encore as a Collector on or about

May 10, 2000.  As a Collector, she called debtors to persuade them to pay their bills.  Alley

understood that she was an at-will employee.

In the summer of 2000, Alley recalls noticing and verbally reporting to her supervisor

problems with Encore's collection system.  Specifically, she noticed that checks she had set up

settlement had were being cashed instead, creating insufficient fund problems for the debtors.

Debtors would call her in response, threatening to sue.  Around October 2000, Alley was

promoted to a Unit Manager, a position that later became known as Team Leader.  As a Team

Leader, Alley co-managed approximately twenty-five Collectors.  The Collectors and Team

Leaders attempted to collect delinquent debts from Encore's clients' customers.  Typically, the

client had already tried, unsuccessfully, to collect the debts.  The client then employed Encore to

collect these debts, and Encore received a certain percentage of what it collected.  The amount

Encore billed its client for this work was contingent on what it collected.  Alley always worked

on the "contingency side" of Encore's business.  Alley and other team leaders were not paid

overtime, and they worked over forty hours per week on a regular basis.

Convergys publishes a Code of Business Conduct[32] ("Code") that "summarizes the

---

[32](Doc. 62, Ex. H.)

professional and ethical standards that Convergys expects [employees] to follow." In describing

the employment relationship, the Code states: "Convergys employment in the United States is 'at

will,' which means that you or the Company may terminate the employment relationship at any

time and for any reason. . . . This Code of Business Conduct is not an employment contract or a

promise of continued employment."[33] If an employee "observe[s] a violation of this Code, you

must report it promptly." The Code provides:

> If you suspect illegal or unethical business practices or conduct in
> the Company, including concerns regarding questionable
> accounting or auditing matters, you must promptly report your
> concerns . . . .
>
> . . .
>
> You must promptly report good-faith concerns or
> reasonable beliefs that the Code has been violated. We do not
> tolerate retaliation against an employee making such a report.
> Anyone who does retaliate violates this Code and is subject to
> disciplinary action.[34]

Defendants do not have a policy that a complaint made pursuant to the Code must be

memorialized in writing.

Alley was a Team Leader on the AT&T/SBC account, along with fellow Team Leaders

Diane Lay and Amber Reynolds. In 2006, Alley worked exclusively on this account. Alley and

Lay worked on the residential contingency side of the account and Reynolds worked on the

commercial contingency side. In the beginning of 2006, Alley, Lay and Reynolds were

supervised by Sean Murray. In the fall 2006, Murray left Encore and Demian Shumaker became

Alley's, Lay's, and Reynold's supervisor. In May 2006, Joe Chadd became Director of

---

[33]*Id.* at 6.

[34]*Id.* at 13–14.

Operations for Encore. As Director of Operations, Chadd supervised Shumaker.

In the summer 2006, Alley learned from Chadd that AT&T/SBC was not happy with Encore's performance. While it appeared on paper that Encore was losing money on this account and that Encore was not performing as well as other collections companies hired by this client, more money was being collected that was not being correctly posted. Chadd told Alley that AT&T/SBC gave Encore an ultimatum—either Alley's team improved their performance or the client would pull their business and find another company to work with.[35] At this time, Alley spoke to Chadd and tried to explain why her team did not appear to be performing well. Chadd asked her to document her concerns and send them in an email.

Alley sent six emails to Chadd and his supervisor, Tom Jordan between July 26, 2006 and September 21, 2006. In those six emails, Alley explained the account file loading, maintenance and closing problems she believed were occurring in Encore's Information Technology, Accounting and Client Services departments. Alley alleges that at different times in her employment, she made various reports to her supervisors of account loading, maintenance and closing problems within Encore's collection systems; her first such reports to Chadd were made in June or July 2006. Alley believed that, due to these problems, Encore was not making as much money as it could have been because it was holding on to money that was collected and received but failing to provide this money or an accurate accounting to its client. This under-reporting prevented an accurate reflection of collection efforts. Chadd told Alley not to send copies of the email reports she had been sending to Jordan.

---

[35]Plaintiff objects to this evidence as hearsay. The Court overrules and denies the objection to the extent it is not being offered to prove the truth of the matter asserted, but only Alley's state of mind. *See* Fed. R. Evid. 801(c).

By reporting these problems, Alley believed that she was doing Encore a favor and hoped that Encore would address the problems. Alley also believed that the reports would result in more revenue for the company and, therefore, more in discretionary bonuses for her and other employees. Alley relied on the Code when she made these reports. Under-reporting of collections revenues by defendants resulted in less discretionary bonus money paid to employees. In August 2006, Chadd told Alley that Encore discovered $480,000 worth of collections that Encore under-recognized due to the account file problems. As a result, Encore never billed AT&T/SBC for that amount. Alley believes Encore discovered the under-billing because of Alley's reports. Alley stated in her deposition that Chadd was "thrilled to death to find out all the issues" and appreciated her reports. Tom Jordan patted her on the back and told her she did a good job. Murray told Alley that someone "at her age" and with her lack of education should not be reporting or complaining about anything she thought to be improper.

In late 2006, Encore had learned that AT&T/SBC was going to end its relationship with Encore. Encore decided to eliminate two of the Team Leader positions. Chadd and Kathy Cooley decided to conduct a "critical skills analysis" of the Team Leaders to determine which positions to eliminate. With the loss of AT&T/SBC, Chadd believed that Encore was "overmanaged."

Prior to the critical skills analysis, Alley had more than satisfactorily performed her job and received positive reviews. And, Alley's past or earlier reviews had never indicated deficiencies in those areas upon which the critical skills analysis was based, or that if she did not improve, she would lose her job or be demoted. Chadd did not consider these past reviews

13

during the critical skills analysis.

During the critical skills analysis, Chadd and Kathy Cooley rated the Team Leaders in a variety of areas such as job knowledge/technical skills and problems solving/decisionmaking. The factors and criteria in the critical skills analysis were subjective. Chadd prepared a spreadsheet of these scores: one with all of the Team Leaders in the Lenexa facility and one with only the three Team Leaders on the AT&T/SBC account. Alley and Lay received the lowest scores on the critical skills analysis, both when compared to all Team Leaders at the Lenexa facility and when compared to Reynolds, the only other Team Leader who worked on the AT&T/SBC account. Encore eliminated Alley's and Lay's Team Leader positions in December 2006. No one was hired to replace Alley or Lay as Team Leaders.

At the time Alley was told that her Team Leader position was eliminated, Chadd offered Alley the job as a Collector with Encore. The collector position required less responsibility. Alley turned down the Collector position. Lay was also offered a Collector job and after initially turning it down, Encore later re-hired Lay as a Collector. Alley decided to move to Texas.

**III. Discussion**

*A      FLSA Retaliation*

Plaintiff asserts a claim for retaliation under the FLSA.[36]  When, as here, there is no

---

[36]29 U.S.C. § 215(a)(3).

direct evidence of retaliation under the FLSA, the Court will apply the burden shifting scheme of *McDonnell Douglas Corp. v. Green*[37] and *Texas Department of Community Affairs v. Burdine.*[38] Under this framework, plaintiff must first prove a *prima facie* case of retaliation.[39]  If plaintiff is able to sustain this burden, the burden of production shifts to defendants to "articulate a legitimate, nondiscriminatory reason for rejection."[40]  If defendants sustain that burden, the burden of production shifts back to plaintiff to show that defendants' proffered reason for rejection is false, or merely a pretext, and the presumption of discrimination created by establishing a *prima facie* case "drops out of the picture."[41]  Although the burden of production shifts back and forth between the parties, the ultimate burden of persuasion remains at all times with the plaintiff.[42]

### 1.    *Prima Facie* Case

To establish a *prima facie* case of FLSA retaliation, plaintiff must show: (1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the adverse action.[43]  Defendants argue on summary

---

[37]411 U.S. 792 (1973).

[38]450 U.S. 248 (1981); *see Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (applying *McDonnellDouglas* burden shifting to FLSA retaliation claim).

[39]*See Burdine*, 450 U.S. at 252–53; *McDonnell Douglas Corp.*, 411 U.S. at 802.

[40]*See McDonnell Douglas Corp.*, 411 U.S. at 802; *Conner*, 121 F.3d at 1394.

[41]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

[42]*Burdine*, 450 U.S. at 253.

[43]*Connor*, 121 F.3d at 1394.

15

judgment that plaintiff has no evidence that Alley engaged in protected activity under the FLSA, and that plaintiff cannot establish a causal connection. Defendants do not dispute that Alley suffered an adverse employment action.

Defendants first argue that Alley did not complain about activity protected under the FLSA because her complaints only concerned discretionary bonus pay. The FLSA protects those who have "filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."[44] However, "even the unofficial assertion of rights through complaints at work is protected."[45] "It is the assertion of statutory rights (i.e., the advocacy of rights) by taking some action adverse to the company . . . that is the hallmark of protected activity under § 215(a)(3)."[46] Plaintiff argues that Alley made numerous reports up to the time she was terminated regarding compensation and overtime issues, and offers Alley's declaration in support of this assertion. Defendants point to Alley's deposition testimony, where she explains that her complaints involved the fact that defendants were undercounting revenue collected on behalf of AT&T/SBC, which effected the bonus pool. But Alley's declaration states that these were not her only complaints with regard to pay. She attests that she did not understand opposing counsel's questions about the scope of her complaints; she believed that when counsel asked if "that was all, or was that it, was there anything else, I understood that to be related to what I was specifically being questioned about . . . ." She stated that she was not able to finish her answers and that her declaration is an attempt to address subject matters and

---

[44] 29 U.S.C. § 215(a)(3).

[45] *Connor*, 121 F.3d at 1394 (quotation omitted).

[46] *McMillin v. Foodbrands Supply Chain Servs.*, 272 F. Supp. 2d 1211, 1218 (D. Kan. 2003).

16

issues that were not brought up in the deposition.  To that end, Alley declares:

> I also believe it is unlawful not to pay employees overtime for hours worked over 40 hours a week.  This is something that was ongoing with me and other team leaders.  I reported this to and discussed this with Joe Chadd on different occasions, including during the weeks or month just before my leaving in December 2006.  Related to that, I also took issue with and told management that time sheets weren't used on a consistent basis and it was not unusual when they were used for them to be knowingly inaccurate.  I don't see how a company can accurately and legally keep track of their employees' pay, benefits, and withholding when that's being done.

According to her declaration, Alley repeatedly reported to Chadd that she and other employees were not being paid overtime.  If believed, a reasonable jury could conclude that Alley engaged in protected activity under the FLSA.

"The causal connection element requires that plaintiff establish that the protected opposition and the adverse action are not wholly unrelated and such an inference is permissible where the adverse action closely follows the protected activity."[47]  Alley states in her declaration that her overtime complaints were made in the weeks or month just before the adverse employment action in December 2006.  This is sufficient to satisfy the causal connection element of the *prima facie* case.

## 2.      Pretext

Defendants have met their burden of production to articulate a legitimate, nonretaliatory reason for Alley's discharge: she was terminated because of the Reduction in Force ("RIF") that was a result of AT&T/SBC withdrawing their business from Encore and because Encore was

---

[47]*Id.* at 1219 (quotation omitted).

overstaffed with managerial positions. A plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[48] Specifically, a plaintiff can show pretext by demonstrating that the employer used subjective criteria.[49] A jury may rely on such evidence to find pretext.[50]

As evidence of pretext, plaintiff points to Chadd's deposition testimony that the critical skills analysis was based on subjective criteria and points out that there is no evidence that objective criteria was used to compile the critical skills ranking. The categories utilized in the critical skills analysis are Job Knowledge/Tech Skills, Flexibility, Execution, Problem Solving/Decision Making, Effectiveness, Teamwork, and Leadership.[51] Defendants submit the criteria and definitions for the critical skills analysis,[52] but viewed in the light most favorable to plaintiff, this supports the contention that it is a wholly subjective process. It provides that the reviewer (Chadd and Cooley in this case) should consider the entire performance of an individual, not single incidents and review patterns of performance. The reviewer is to rank each critical skill on a rating scale of 1 to 5 based on a benchmark system. Because Chadd did not consider past evaluations, it is unclear to the Court what contributed to these rankings aside from Chadd's and Cooley's subjective impressions of performance criteria. Viewing the evidence in the light most favorable to plaintiff, the critical skills analysis was wholly subjective and there is

---

[48]*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).

[49]*See, e.g.*, *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002) (collecting cases).

[50]*Id.*; *see also Woods v. Boeing Co.*, No. 07-3358, 2009 WL 4609678, at *4 (10th Cir. Dec. 8, 2009).

[51](Doc. 51, Ex. E.)

[52](Doc. 69, Ex. P.)

no evidence that Chadd objectively measured scores for the performance-centered categories.[53] Under these circumstances, the Court finds that this is evidence of pretext.

Plaintiff also produced evidence that defendants may have conducted a critical skills analysis of only the three Team Leaders in Alley's team—not for the entire facility.[54] This is inconsistent with defendants explanation that the RIF was needed because the Lenexa facility was "overmanaged." And, since Reynolds' position was not eliminated, the fact that Chadd only eliminated Alley's and Lay's positions is inconsistent with defendants' explanation that the RIF was necessary due to the loss of AT&T/SBC as a client. While it is a close call, the Court agrees that plaintiff is able to demonstrate there is a genuine issue of material fact with regard to pretext.

### B.        Breach of Contract and Promissory Estoppel

Kansas generally follows the employment-at-will doctrine, meaning "that, in the absence of an express or implied contract between an employee and employer regarding the duration of employment, either party is free to end the employment at any time for any reason."[55] The employment-at-will doctrine has many exceptions. As discussed more fully in the next section, one exception is that an employee cannot be discharged for whistleblowing.[56]

---

[53] *Pippen v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1195 (10th Cir. 2006) (distinguishing *Garrett* because there, the defendants did not contest that the rankings were wholly subjective, while in *Pippin*, the evaluation required the immediate supervisor to "enumerate specific results achieved with supporting examples . . . [and] used a particular evaluation form that included multiple mandatory areas for evaluation, and Pippin's evaluations showed a *consistent* patter of 'soft skill' issues over more than ten years.").

[54] (Doc. 65, Ex. T.)

[55] *Palmer v. Brown*, 752 P.2d 685, 687 (Kan. 1988); *see also, e.g.*, *Foster v. Alliedsignal Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002) (citing *Morriss v. Coleman Co.*, 738 P.2d 841, 846 (Kan. 1987)).

[56] *Palmer*, 752 P.2d at 689–90.

Plaintiff claims that Alley had an implied-in-fact contract for continued employment based on the statements in the Code that required plaintiff to report any violations of the Code and the Code's promise that employees will not be retaliated against for making such reports. Defendants point to the clear language on page six of the Code, where it explicitly states that it is not a contract and reiterates that all of Convergys' employees are at-will.

The existence of an implied contract "depends on the intent of the parties, divined from the totality of the circumstances."[57] The existence of a disclaimer in the employee handbook does not determine the issue as a matter of law.[58] While the existence of an implied contract for employment is normally a question of fact for the jury, summary judgment may be appropriate when the plaintiff fails to present evidence of "'anything above and beyond the terms of the personnel manual.'"[59] Standing alone, provisions of an employee handbook stating that employees will not suffer adverse action for reporting violations of the handbook are insufficient as a matter of law to establish an implied contract of employment.[60] Here, plaintiff comes forward with no evidence other than the Code to support his claim of an implied contract. Under controlling Kansas and Tenth Circuit authority, his claim is unavailing. The Code itself explicitly provides that it does not constitute a contract and Alley testified at her deposition that she understood her employment was at-will. Under these circumstances, summary judgment is

---

[57]*Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 537 (10th Cir. 1995).

[58]*Id.* at 538 (discussing *Morriss*, 738 P.2d at 849).

[59]*Id.* (quoting *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1140 (10th Cir. 1994)).

[60]*Id.*; *Zwygart v. Bd. of County Comm'rs of Jefferson County, Kan.*, 412 F. Supp. 2d 1193, 1200 (D. Kan. 2006), *aff'd*, 483 F.3d 1086 (10th Cir. 2007); *Litton v. Maverick Paper Co.*, 388 F. Supp. 2d 1261, 1293 (D. Kan. 2005); *see also Brown v. United Methodist Homes for the Aged*, 815 P.2d 72, 83 (Kan. 1991) (finding question of fact when employment at-will language added to manual after plaintiff's employment).

appropriate on plaintiff's implied contract claim.

Alternately, plaintiff argues that the anti-retaliation provisions in the Code support a claim of promissory estoppel, pointing to authority in the Seventh Circuit that applied Indiana law.[61] Plaintiff identifies no authority under Kansas law that an employee may be entitled to relief under a promissory estoppel theory based on representations in an employee handbook. Even if Kansas did recognize a cause of action under these circumstances, the Court would find summary judgment appropriate. To invoke the doctrine of promissory estoppel, plaintiff must come forward with evidence that the "promise was made under circumstances where the promisor intended and reasonably expected that the promise would be relied upon by the promisee and further that the promisee acted reasonably in relying upon the promise."[62] The Court finds that the disclaimer in the Code is clear evidence that defendants did not intend for the Code to constitute a promise or contract or agreement. Furthermore, Alley's admission during summary judgment that she read the Code and understood that she was an employee at-will vitiates any claim of reasonable reliance. Alley's declaration does not salvage her claim of reliance because it merely establishes her own expectations and understanding of the Code provisions, it does not create a genuine issue of material fact about whether her reliance was reasonable or whether defendants intended to be bound by any of the assurances set forth therein.

### C.      *Whistleblower Retaliation*

When a retaliatory discharge claim is based on circumstantial evidence, Kansas courts

---

[61]533 F.3d 594 (7th Cir. 2008); *see also Darr v. Town of Telluride, Colo.*, 495 F.3d 1243 (10th Cir. 2007) (applying Colorado law).

[62]*Patrons Mut. Ins. Ass'n v. Union Gas Sys., Inc.*, 830 P.2d 35, 39 (Kan. 1992).

apply the *McDonnell Douglas*[63] burden-shifting framework.[64] Under that approach, a plaintiff's establishment of a *prima facie* case creates a presumption of retaliation.[65] The burden then shifts to the defendant to produce evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason.[66] If the defendant meets this burden, the burden shifts back to the plaintiff to present evidence that the proffered reason was not the true reason for the employment decision.[67]

To establish a *prima facie* case of whistleblower retaliation, a plaintiff must show that: (1) a reasonably prudent person would have concluded the employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; (2) the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and (3) the employee was discharged for making the report.[68] In addition, the whistleblowing "must have been done out of a good faith concern over the wrongful activity reported rather than from a corrupt motive such as malice, spite, jealousy or personal gain."[69]

"Under Kansas law, a retaliatory discharge case must be proved by a preponderance of

---

[63]*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

[64]*Foster v. Alliedsignal Inc.*, 293 F.3d 1187, 1193 (10th Cir. 2002); *Goodman v. Wesley Med. Ctr., L.L.C.*, 78 P.3d 817, 821 (Kan. 2003).

[65]*See, e.g.*, *Goodman*, 78 P.3d at 821.

[66]*See id.*

[67]*Id.*

[68]*Palmer v. Brown*, 752 P.2d 685, 689–90 (Kan. 1988).; *see also Bergersen v. Shelter Mut. Ins. Co.*, 229 F. App'x 750, 754 (10th Cir. 2007).

[69]*Palmer*, 752 P.2d at 690.

the evidence, but the evidence must be clear and convincing in nature."[70]  Clear and convincing

means "highly probable."[71]  Defendants argue in their motion for summary judgment that the

*prima facie* case must be shown by clear and convincing evidence.  But the plaintiff is not held

to a clear and convincing evidence standard at the *prima facie* stage, as it "would pervert the

logic of the *McDonnell Douglas* burden-shifting scheme adopted by the Kansas courts."[72]

Instead, this burden comes into play at the pretext stage.[73]  While a plaintiff need not meet this

heightened standard on summary judgment in the state's own courts,

> [A] plaintiff in federal court who opposes a summary judgment in
> a retaliatory discharge case based on Kansas law must set forth
> evidence of a clear and convincing nature that, if believed by the
> ultimate factfinder, would establish that plaintiff was more likely
> than not the victim of illegal retaliation by her employer.[74]

Therefore, the Court declines to apply the heightened standard to plaintiff in evaluating the

*prima facie* case.  The Court will apply the clear and convincing evidence standard as set forth

above at the pretext stage of the Court's analysis.

### 1.    *Prima Facie* Case

Defendants argue that Alley cannot establish a *prima facie* case of whistleblower

retaliation for the following reasons: (1) Alley did not report violations of Kansas law or public

policy; (2) Alley did not take a position adverse to her employer; (3) Alley's reports were made

---

[70]*Eckman v. Superior Indus. Int'l, Inc.*, No. 05-2318, 2007 WL 195199, at *6 (D. Kan. July 2, 2007) (citing *Ortega v. IBP, Inc.*, 874 P.2d 1188, 1198 (1994)).

[71]*In re B.D.-Y.*, 187 P.3d 594, 606 (Kan. 2008).

[72]*Foster*, 293 F.3d at 1193 n.3.

[73]*Id.* at 1193.

[74]*Id.* at 1195; *see also Eckman*, 2007 WL 1959199 at *6.

for personal gain; and (4) Alley cannot show causation.

Defendants first argue that Alley's complaints did not allege that her employer engaged in illegal activity. At most, defendants maintain that she was complaining of internal company procedures such as account loading, and maintenance and closing problems with the collection systems. Plaintiff responds that Alley's reports alleged: unlawful debt collection practices, fraud, theft, improper client billing, unlawful compensation and inaccurate corporate financial recordkeeping. Alley's declaration attests that she had a good faith belief that she was making such reports. Plaintiff argues that such reports concern violations of Kansas law or public policy. Alley is protected from retaliation for reporting "of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials."[75] Violation of a company's own internal policies does not amount to violation of a rule, regulation, or law pertaining to public health, safety, and the general welfare under *Palmer*.[76] "Public policy cannot be determined on a subjective basis, but 'should be so thoroughly established as a state of public mind so united and so definite and fixed that its existence is not subject to any substantial doubt.'"[77]

The parties dispute the subject matter of Alley's complaints during her employment. Defendants contend that they were limited to the six emails attached to their motion as Exhibit D, while plaintiff contends that Alley complained both in these emails, and "on any number of times prior to my being terminated in December 2006." She states that the emails in the summer

---

[75]*Palmer v. Brown*, 752 P.2d 685, 687 (Kan. 1988).

[76]*Herman v. W. Fin. Corp.*, 869 P.2d 696, 703–04 (Kan. 1994); *Almon v. Goodyear Tire & Rubber Co.*, No. 07-4104-SAC, 2009 WL 1421199, at *12 (D. Kan. May 20, 2009).

[77]*Wells v. Accredo Health Group, Inc.*, No. 05-2422, 2006 WL 1913140, at *2 (D. Kan. July 11, 2006) (quoting *Palmer*, 752 P.2d at 689).

and fall 2006 were not the only reports she made. Alley generally stated in her declaration that she believed in good faith that she was complaining about issues that were improper, unethical, and/or unlawful. She believed defendants' collection practices amounted to theft, fraud, and a violation of the Fair Debt Collection Practices Act ("FDCPA"). She also states in her declaration that she complained about lack of overtime pay. This evidence suffices to create a genuine issue of material fact about whether a reasonably prudent person would have concluded that defendants violated rules, regulations, or laws pertaining to the health, safety, and the general welfare.

Defendants argue that Alley did not take a position adverse to her employer because her complaints were intended to increase revenue. Again, this argument relies only on Alley's deposition testimony about complaints surrounding the accounting mistakes. She testified that when she reported the mistakes to Chadd and Jordan, she thought she was doing defendants a favor. Again, the Court must view the evidence in the light most favorable to plaintiff, including Alley's declaration. She maintains in her declaration that she accused the company of theft and fraud and of withholding overtime pay from employees. If she is believed, a reasonable jury could conclude that Alley's complaints were adverse to her employer.

Next, defendants argue that Alley complained because the accounting practices impacted her bonus pay; therefore, the complaints were motivated by personal gain. She testified during her deposition that maximizing collections, which was her goal in making these reports, would "benefit[] everybody." But Alley stated in her declaration that she complained because she did not believe a collections company "could force an individual to pay it money they don't owe," and that she believed the company's practice of double posting "bad" checks created legal issues

with the banks. While Alley certainly stood to gain a larger bonus if greater amounts were collected on her clients' behalf, a reasonable jury could conclude that she was motivated by a good faith concern over the wrongful activity reported.

Finally, defendants argue that there is no evidence from which a reasonable jury could conclude that Alley's position was eliminated because of her complaints. "Proximity in time between the claim and discharge is a typical beginning point for proof of a causal connection."[78] If temporal proximity is not close, "the claimant will need to produce additional evidence in order to show causation."[79] Defendants again rely on the six emails Alley wrote in the summer of 2006, approximately four months prior to the adverse employment action, and point to Alley's deposition testimony indicating that these were her only complaints. Yet, Alley states in her declaration that she made reports up until the time her position was eliminated in December 2006. Alley states in her declaration that she was confused by many of the questions propounded during her deposition regarding the scope of her complaints and that she was not allowed by opposing counsel to fully explain her answers. As a result, she filed the declaration, where she clarifies that she actually made reports outside of the six emails identified by defendants. The Court may not weigh credibility on summary judgment; a reasonable jury could believe her statements that she complained up until just prior to the adverse employment action. The Court finds that this is sufficient to create a genuine issue of material fact about the timing of her complaints. And, if her testimony is believed, it would be sufficient to show that the

---

[78]*Rebarcheck v. Farmers Coop. Elevator & Mercantile Ass'n of Dighton, Kan.*, 35 P.3d 892, 899 (Kan. 2001).

[79]*Id.*

adverse action is very closely connected in time to the protected activity.[80]

## 2. Pretext

Defendants have again met their burden of production to articulate a legitimate, nonretaliatory reason for plaintiff's discharge: she was terminated because of the RIF that was a result of AT&T/SBC withdrawing their business from Encore and because Encore was overstaffed with managerial positions. Defendants contend that Encore decided to eliminate two Team Leader positions for these reasons. Chadd conducted a critical skills analysis and since Alley and Lay received the lowest scores, they were offered jobs as Collectors.

Therefore, the burden shifts to plaintiff to show that defendants' stated reason is a pretext for whistleblower retaliation by a preponderance of the evidence that is clear and convincing in nature.[81] Plaintiff "must assert specific facts establishing a triable issue as to whether the employer's reason for discharge is a mere cover-up or pretext for retaliatory discharge.'"[82] Even under this more exacting clear and convincing evidence standard, "'[t]he evidence of the nonmovant is to be believed , and all justifiable inferences are to be drawn in his favor.'"[83] Furthermore, plaintiff "does not need to show that retaliation was the employer's sole motive or

---

[80]*See, e.g.*, *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) ("A six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient."); *see also Hysten v. Burlington N. Santa Fe Ry.*, 372 F. Supp. 2d 1246, 1254 (D. Kan. 2005) ("A causal connection may be demonstrated by evidence such as protected conduct closely followed by adverse action.").

[81]*Foster v. Alliedsignal Inc.*, 293 F.3d 1187, 1194 (10th Cir. 2002).

[82]*Id.* (quoting *Bracken v. Dixon Indus., Inc.*, 38 P.3d 679, 682 (Kan. 2002)); *see also Bergersen v. Shelter Mut. Ins. Co.*, 229 F. App'x 750, 755 (10th Cir. 2007).

[83]*Foster*, 293 F.3d at 1194 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

reason for the termination."[84]  The Court must keep in mind that "the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs."[85]

In support of his pretext showing, plaintiff points to the following evidence: (1) statements by one of Alley's supervisors that Alley had no right to complain about anything at her age and with her lack of education; (2) Chadd's directive to stop copying Jordan, Chadd's superior, on her email complaints; (3) the critical skills analysis was based on subjective criteria; (4) the critical skills analysis failed to consider Alley's past, positive reviews; (5) other individuals who complained to Chadd also received the lowest scores on the critical skills analysis; (6) defendants only conducted a critical skills analysis for three team leaders in Alley's unit; (7) defendants lacked policies and procedures regarding employee complaint reporting, investigation, recognition, and recordkeeping; (8) defendants presented Alley with a release when they offered her the collector position; (9) Alley's complaints are unresolved and had no ramifications for Chadd or other managerial employees at Encore; (10) Encore made no attempt to locate the missing money that Alley had complained about; and (11) defendants failed to place a litigation hold or otherwise investigate Alley's claims until after the instant lawsuit was filed.

Several of these arguments are either not supported by the record or are not probative of pretext.  For example, the evidence does not support plaintiff's contention that defendants lacked any policies and procedures for employee complaint reporting, investigation, recognition, and recordkeeping.  The cited-to evidence merely supports the assertion that defendants lacked a

---

[84]*Id.* at 1196 (quotation omitted).

[85]*Hysten v. Burlington N. Santa Fe Ry.*, 372 F. Supp. 2d 1246, 1256–57 (D. Kan. 2005

policy for memorializing written complaints based on Code violations.  To be sure, the interrogatory cited by plaintiff was objected to as unduly broad.

Likewise, plaintiff's assertion about when defendants began investigating plaintiff's claims is not supported by the record.  Defendants maintain that they began to investigate the claims propounded in this lawsuit when it was filed on December 8, 2008.[86]  Defendants submit evidence that they began investigating Alley's claims in April 2007, upon receipt of a letter from her.  Additionally, the plaintiff makes no attempt to explain how the failure to investigate Alley's claims in this lawsuit would be probative of pretext.  Similarly, the Court does not consider Murray's statements as evidence of pretext.  He was not the decision maker with regard to the RIF.[87]

Finally, the Court is unable to locate any evidence in the record to support plaintiff's assertion that other individuals who complained to Chadd also received the lowest scores on the critical skills analysis.  In support of this assertion, plaintiff submits the critical skills analysis spreadsheets.  But these only show the individuals who were evaluated in the critical skills analysis and their scores.  Plaintiff cites no evidence that Lay and Reynolds also made complaints to Chadd or any other supervisor.

Despite these shortcomings, the Court does find that plaintiff is able to point to other, specific facts establishing a triable issue that defendants' reason for the RIF was pretextual. First, as noted on the FLSA retaliation claim, the subjective nature of the RIF coupled with the

---

[86](Doc. 68, Ex. R. at 5.)

[87]*See Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007) ("In determining whether the proffered reason for the decision was pretextual, we examine the facts as they appear *to the person making the decision*." (quotation omitted)).

inconsistent explanations provided by defendants about the scope of the RIF and critical skills

analysis is evidence of pretext.  Also, plaintiff points to evidence that in the past, Alley had more

than satisfactorily performed her job and received positive reviews.  And, Alley's past or earlier

reviews had never indicated deficiencies in those areas upon which the critical skills analysis

was based, or that if she did not improve, she would lose her job or be demoted.  While

defendants are correct that "it is the perception of the decision maker which is relevant, not

plaintiff's perception of herself,"[88] plaintiff offers this evidence not to show her own perception

of her past performance, but to show that her prior evaluations are inconsistent with the critical

skills analysis.  The Court finds that this evidence, coupled with plaintiff's evidence on the

*prima facie* case, creates a genuine issue of material fact with regard to pretext; therefore

summary judgment is inappropriate.


## IV.      Motion for Sanctions

Before Alley left Encore, in April 2006, she purchased a home in Jacksonville, Florida.

Alley stated at her deposition that she never told the lender that she was planning to move to

Florida.  However, in order to get her loan, Alley signed a document under penalty of perjury

stating that she planned to move to Florida within sixty days after closing and make it her

primary residence.  In the loan records, defendants allege that Alley further misrepresented the

number of years she worked at Encore, her income at Encore, and her marital status.  Moreover,

a fellow manager at Encore, Joe Cook, wrote a letter to the lender verifying that she was leaving

---

[88]*Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988); *Pippen v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1196–97 (10th Cir. 2006).

the Kansas City area and moving to Florida.  Alley claimed at her deposition that she only knew Cook in passing and had no idea why he would write such a letter.  The mortgage records state that Cook purportedly leased Alley's home in Kansas City for $1950 per month to bolster her claim that she was moving to Florida as her primary residence.

At the conclusion of their motion for summary judgment, defendants argue that the case should be dismissed as a sanction because Alley perjured herself multiple times during discovery.  In *Chambers v. NASCO, Inc.*,[89] the Supreme Court observed that "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."[90]  This is an inherent power vested in the courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[91]  Included in this inherent power is "the authority to vacate a judgment when a fraud has been perpetrated on the court, such as when a party has perjured himself during the discovery process."[92]  While the Court has discretion to dismiss, it should be exercised with restraint and is only appropriate in cases of "willfulness, bad faith, or [some] fault of petitioner."[93]  The Court must consider the following factors in determining whether dismissal is an appropriate sanction:

> "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the

---

[89]501 U.S. 32 (1991).

[90]*Id.* at 43 (quotation omitted).

[91]*Id.* (quotation omitted).

[92]*Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005) (citing *Chambers*, 501 U.S. at 44; *Archibeque v. Atchison, Topeka, & Santa Fe Ry.*, 70 F.3d 1172, 1174 (10th Cir. 1995)).

[93]*Id.* (quotation omitted).

litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions."[94]

"This list is not exhaustive,"[95] and it is not a "rigid test."[96]

Defendants failed to address any of these factors in their motion. The Court finds little if any actual prejudice to defendants in this case. Assuming that Alley perjured herself on this issue during her deposition, defendants are unable to explain how this prejudiced them. It is unclear how these issue are even relevant to the claims in this case. The factual issues involved appear relevant only to the bankruptcy proceeding. While defendants may be able to show interference with the bankruptcy case, they stop short of explaining its relevance to Alley's claims in this case against her former employer. If Alley did perjure herself during her deposition, she is not technically the *litigant* in this action. Moreover, she submitted a declaration stating that she has never deliberately or knowingly made a false or misleading statement or representation in connection with her tax returns or mortgage application. While the Court notes that no prior warning has been given that dismissal may be a sanction, in the case of perjury, this would have been difficult to accomplish given that the perjury has already occurred. The Court finds that the lack of actual prejudice in this matter overwhelmingly counsels against dismissal as a sanction for Alley's alleged perjury during her deposition in this matter.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion for

---

[94]*Id.* (quoting *Eherenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)).

[95]*Id.*

[96]*Archibeque*, 70 F.3d at 1174.

Summary Judgment (Doc. 46) is granted in part and denied in part. The motion is granted on plaintiff's breach of contract/promissory estoppel claim and denied on the retaliation claims. Plaintiff's Motion for Leave to File Surreply (Doc. 70) is **denied**.

Dated: <u>March 17, 2010</u>

<u>S/ Julie A. Robinson</u>
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE